STOLL v. COMMERCIAL NATIONAL BANK.

No. 2558.   Decided March 27, 1914 (140 Pac. 115).

1. BANKS AND BANKING—LIABILITY TO DEPOSITORS—VIOLATIONS OF DIRECTIONS. Where plaintiff directed the defendant bank not to honor any further checks drawn by one purporting to act as her agent, and the bank allowed him to draw out all of her funds then on deposit, it cannot escape liability for its act in honoring his checks drawn after more funds had been deposited, upon the theory that the revocation of the agent's

authority applied only to those funds then on deposit, and did not apply to those later deposited, because that deposit was made in a new account by reason of the bank's system of book-keeping. (Page 264.)

2. BANKS AND BANKING—DEPOSIT—AUTHORITY TO DRAW CHECKS. In an action by a depositor who claimed that the defendant bank had wrongfully honored checks drawn on her account by one purporting to act as her agent, evidence *held* insufficient to show that the bank was justified in believing that the agent whose authority had been revoked was entitled to draw checks. (Page 268.)

3. BANKS AND BANKING—RIGHTS OF DEPOSITOR—AUTHORITY OF AGENT TO DRAW CHECKS. Where a depositor notified a bank not to cash any more checks drawn by one purporting to act as her agent, and the agent thereafter sold her property, depositing the proceeds to her credit, and sending her a check therefor, signed in her name per him as agent, the depositor's presentation of the check for payment after retention for several days is no evidence showing the bank's authority to honor other checks drawn by the agent in the interim. (Page 268.)

APPEAL from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action by Eliza D. Stoll against the Commercial National Bank.

Judgment for part of plaintiff's claim. Plaintiff appeals.

REVERSED AND REMANDED WITH DIRECTIONS.

*N. V. Jones* for appellant.

*H. J. Dininny* for respondent.

APPELLANT'S POINTS.

All checks and disbursements must be made in manner and form as prescribed by the depositor. (Zane on Banks and Banking, p. 255, note 5.) If money is deposited with a bank by an agent to the credit of his principal the bank has no right to assume that the agent is authorized to do more than

to make the deposit. It has notice thereby that the funds
deposited are the property of the principal and not of the
agent. The title thereto is in the principal. (Zane on Banks
and Banking, pp. 216-17; *Honig v. Pacific Bank,* 73 Cal.
464; Mechem on Agency, Section 308.) The burden of
proving the agency and the extent of his authority is upon
the respondent in this case. Respondent was not authorized
to rely on the statement of the agent Russell for his author-
ity. His authority must also be properly construed to be in
harmony with the law. (Enc. of Evidence, Vol. 10, pp. 6,
18; and citations thereunder.)

Where a bank has once received notice or acquired knowl-
edge of a fact through an agent, competent to receive it, who
received it officially, the notice is always binding upon it.
(Zane on Banks and Banking, pp. 173 and 175; *Mechan-
ics Bank, etc. of Alexandria v. Seton, etc.,* I Peters [U. S.]
299.) A bank is bound by notice to its agents and officers act-
ing for it in their capacity as such; and will not be heard
to dispute it. (Zane on Banks and Banking, p. 174 and cases
cited; *Strauss v. Tradesman's Bank,* 122 N. Y. 379; *Wins-
low v. Herriman Iron Co. (First Nat. Bank of Chattanooga
Intervenor),* 42 Southwestern Rep. 698; 5 Cyc., 460.)

STRAUP, J.

The defendant is a banking institution in Salt Lake City.
The plaintiff was one of its depositors. She brought this ac-
tion to recover for moneys which she alleged were paid out
on her account without her authority, and for an accounting.
She was given judgment for $194.63, and appeals. She
claims on the record she is entitled to a judgment for $990.75
more, and interest thereon.

In October, 1908, she was the owner of a rooming house
in Salt Lake City. One D. B. Russell was one of her room-
ers. On the 16th of that month she sold the rooming house
to one Ray; and for the greater part of the purchase
price took his promissory notes secured by chattel
mortgage on the furniture. The mortgage was re-
corded. The business, or some of it connected with the

sale, was conducted by Russell for the plaintiff. She was
indebted to the owner of the building for rent in the sum
of $58.35. The Ray notes were left with the owner's at-
torneys until the rent should be paid. About that time, or
shortly thereafter, she moved to Idaho. Later she sent a
check to Russell at Salt Lake City for $58.35 to pay the rent.
He took up the notes and mortgage, and took them to the de-
fendant's bank, and there applied for a loan of $200 in the
name of the plaintiff, and offered to give the Ray notes and
mortgage as security. His authority to negotiate the loan
was questioned by the bank. He produced what the witnesses
called a power of attorney which, he claimed, authorized
him to do business for the plaintiff. The instrument was
not in possession of either party, and hence was not produced
at the trial. The witnesses who saw it testified that it was a
writing of but a few lines on note paper in Russell's hand-
writing, apparently signed by the plaintiff, and that the
substance of it was to give Russell "power to transact busi-
ness for" the plaintiff. It was not acknowledged and not
recorded. The plaintiff denied that she signed it, or that
she gave Russell any such authority or power whatever. He,
in virtue of such pretended power of attorney and authority,
borrowed $200 at the bank, signed a note for that amount in
plaintiff's name, per his name as agent or attorney in fact,
deposited the Ray notes and mortgage as security, then de-
posited the $200 and the check for $58.35 in defendant's
bank in plaintiff's name, and then drew checks on the ac-
count in plaintiff's name, per his name as agent or attorney.
In that manner he drew a check in favor of the attorneys for
the owner of the building for the rent, and also drew other
checks in the same manner on the account. Later he wrote
the plaintiff that he had borrowed $200 at the bank, and
stated that he himself desired fifteen dollars, and later wrote
that he needed sixty-five dollars for his own use. The plain-
tiff, as she testified, becoming suspicious, on the 8th day of
November, 1908 wrote the bank, "Please do not cash any
checks in my name not coming direct from me here at Twin
Falls, Idaho." That letter was received by the bank on the

11th of that month. That the letter was written and so received by it is not disputed. It ever since remained in its possession, and, on notice, was produced by it on the trial. On the 11th, when the bank received the letter, there was standing to the plaintiff's credit in the bank the sum of $135. She, by this action, has not sought to repudiate the loan, nor to recover for anything which the bank paid out on checks drawn by Russell prior to November 11th. She seeks to recover the moneys which the bank thereafter paid out on his checks drawn on her account. Notwithstanding the instructions and directions received by the bank from the plaintiff, it nevertheless, on the 11th of December, honored and cashed a check presented by Russell drawn on plaintiff's account in her name, per his name as agent or attorney, for the sum of $135. That was all the money she then had on deposit to her credit. In the early part of January, 1909, Russell, without the knowledge, consent or authority of the plaintiff, released the Ray mortgage of record, and resold the rooming house to one Amy for a consideration of $1880, $1200 of which was paid by check, payable to the order of the plaintiff, and $680 in promissory notes executed by Amy, and secured by mortgage. Russell took the $1200 to the bank, indorsed it in plaintiff's name, per his name as agent, and deposited $1106.90 to her credit, and in her name, and took the balance, $93.10, in cash which he kept. Then he drew a check in plaintiff's name, per his name as agent, payable to the bank, in the sum of $106.90, the balance due and unpaid on the $200 loan. That left $1000 standing to plaintiff's credit in the bank on the 12th of January, 1909. It is this money—the $1000—which later was drawn out by Russell in violation of her directions, for which she claims additional judgment. On the 12th of January Russell wrote the plaintiff that he had resold the rooming house, and that there was to her credit in the defendant's bank $1000, and that he had by registered package sent her the Amy mortgage and a check for $1000, payable to her order, signed in her name, per his name as agent, and advised her that, if she left the money in the bank she could get four per cent. interest, or,

if she desired to use it, to indorse the check and mail it to the bank, and request a New York draft. That was the first knowledge she had that Russell had resold the rooming house. She at once communicated with friends at Salt Lake City concerning the matter, and on the 25th mailed the check unindorsed to the bank, and requested a New York draft for $1000. The check and letter were received by the bank on the 28th. It replied that: "The check is unindorsed. We are holding this check until we can see Mr. Russell, as he has not yet deposited funds to meet the same." There was not then $1000 to her credit. Between the 12th and 19th of January Russell drew on the $1000 deposit by checks, most of them payable to and presented by himself, one for $750, and all of them for his benefit, signed in plaintiff's name, per his name as agent, until the amount on the 19th of January was reduced to $9.25. Then Russell absconded, and has not been heard of since. That he was an imposter and a cheat is clearly shown.

The court awarded plaintiff a judgment for $135, the amount which was on deposit to her credit November 11, 1909, when the bank received her letter notifying it not to cash any check not coming direct from her at Twin Falls, and for $9.25, the amount still standing to her credit, and interest on these amounts, a total of $194.63. But the court did not award her anything for other moneys checked out on her account by Russell after the receipt of the letter by the bank. This on the theory, as found by the court: "That, with the payment of the defendant of the $135 check on December 11, 1908, all the money on deposit in the defendant bank, and which was obtained as a loan, was paid out, and that account closed, and, when the deposit of the $1106.90 was made by Russell January 12, 1909, a new account was opened, and the defendant believed, and was justified in the belief, that the new transaction, viz., the deposit of said money by Russell and the drawing of the checks as attorney in fact, or agent of the plaintiff, were authorized by plaintiff, and within authority of said Russell. That plaintiff is not entitled to judgment against the defendant for any sum or

amount, except for $135, with interest from December 11, 1908, amounting to $182.25, and $9.25 with interest from January 20, 1909, amounting to the sum of $12.38, in all the sum of $194.63."

The only direct evidence to support this finding is the testimony of the defendant's bookkeeper that plaintiff's "account was closed on December 11, 1908," when Russell drew the $135 check, all the money the plaintiff then had at the bank, and that, when Russell thereafter, on the 12th of January, deposited to her account and credit the $1200 Amy check, less $93.10 cash kept by him, a new account was opened. Hence the defendant contended, and the court found, that the letter written by plaintiff in November directing the bank not to pay any checks in her name not coming direct from her applied only to the so-called first account, and not to the second. We see nothing in the record to justify that. The plain disregard of plaintiff's directions given the bank cannot be justified by its mode of bookkeeping, or by entries made by it on its books closing and opening accounts. It cannot by its own boot straps lift itself out of trouble in any such manner as that. Nor may it justify such disregard by placing a construction on plaintiff's letter which it will not bear—that it applied to plaintiff's funds on deposit in December, but not to those in January. That is an unwarrantable interpretation of plaintiff's letter.

The court awarded the plaintiff judgment for the $135, on the theory that whatever power or authority Russell had to draw on her account was revoked by her letter to the bank. No other power or authority whatever thereafter to draw on her account by Russell is shown or found.    **2, 3** The court, nevertheless, found that the bank, after it received the letter, believed, and was justified in the belief, that he was authorized to draw on her account. But there is nothing to support that. Between the 11th of December, when the bank cashed and honored Russell's check for $135, which the court found was unauthorized, and January 12th, when he deposited $1106.90 to plaintiff's credit, and drew

checks on her account, no dealings or transactions whatever were had between the plaintiff and the bank, nor was there anything said or done by her to show that any such power was restored or reconferred. The bank, on the 11th of December, honored and cashed Russell's check for the $135 in utter disregard of plaintiff's letter, and likewise in January cashed and honored his checks in utter disregard of her directions and instructions. It did not then treat the letter revoking Russell's authority applicable to the so-called one account and inapplicable to the other. It wholly disregarded and ignored it as to both. But it is claimed that the plaintiff, by holding the $1000 check which Russell had mailed to her on the 12th of January until the 26th, when she sent it to the bank, and requested a New York draft, acquiesced in Russell's authority to draw checks. There is nothing to that. The bank had no knowledge whatever of that check until the 28th of January, when it received it from the plaintiff. Prior to that, between the 12th and the 19th, it had honored and cashed Russell's checks drawn on her account until on the 19th it was reduced to $9.25. So the knowledge which it obtained on the 28th in no sense influenced it in honoring and cashing Russell's checks drawn on her account and presented by him prior to that time. Such subsequently acquired knowledge cannot be looked to to support the finding that the defendant believed, and was justified in the belief, that Russell was authorized to draw the checks drawn and presented by him after the letter of revocation. Nowhere has the court even found that Russell was in fact at any time authorized to draw on plaintiff's account. It but found that the defendant believed, and was justified in the belief, that he was authorized. But nothing was found, nor does the record show anything, to support that. The court finds that "on November 2, 1908, Russell presented to the bank a paper purporting to be signed by plaintiff apparently genuine, empowering him to attend to her business in Salt Lake City"—the socalled power of attorney. No finding is made that it was signed by her, or that she in fact had given him any such authority. But the

court expressly finds that the defendant, on the 11th of November, received from the plaintiff the letter which in clear terms directed it not to cash any checks in her name not coming direct from her, and that the defendant thereafter, without authority, honored and cashed Russell's check for $135 on the 11th of December, thus recognizing and treating the letter as a revocation of Russell's authority and power to draw checks on her account. Now, what happened thereafter to show that any such authority or power was restored or reconferred? Nothing is found, nor pointed to, except the $1000 check which Russell mailed to the plaintiff, but of which the bank had no knowledge whatever, until ten or fifteen days after it had honored and cashed Russell's checks reducing the account to $9.25.

We think on the record, and on the facts found by the court, except the conclusion or finding referred to which is wholly unsupported, and not justified, the plaintiff is entitled to a judgment for the additional sum prayed for, $990.75, and interest. The case is therefore remanded, with directions to so amend the findings and the judgment. Appellant to recover costs.

McCARTY C. J., and FRICK, J., concur.